UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                                                    :

JOHN BACHETY,                                           :      **MEMORANDUM DECISION AND ORDER**

                          Plaintiff,          :

                                                        :      19-cv-5239 (BMC)

            - against -                             :

COMMISSIONER OF SOCIAL SECURITY,  :

                        Defendant.      :
----------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff seeks review of a decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not disabled for purposes of receiving disability insurance benefits and supplemental security income. The ALJ found that plaintiff met the definition of disability under the Act as of April 15, 2018, but not from his alleged onset date of May 27, 2015. Prior to April 15, 2018, the ALJ found that plaintiff had sufficient residual functional capacity to perform "light work," see 20 C.F.R. § 404.1567(b), with significant restrictions, despite having severe impairments of prior arthroscopy on his right shoulder, degenerative disk disease, and cervical disc herniation.

**I.    Left Shoulder**

      Plaintiff's first point of error is that the ALJ did not adequately consider the effect of limitations to his left shoulder as bearing on his residual functional capacity. According to plaintiff, the ALJ should have expressly addressed whether, by itself or with the addition of his other musculoskeletal impairments, plaintiff met the requirements for a listed disability or, at least, the ALJ should have considered the impairment in his left shoulder as a "severe"

impairment and found that, combined with plaintiff's other impairments, it so limited his RFC that he could not do light work.

It is true that the ALJ did not expressly exclude whether plaintiff's left shoulder limitations met the definition of a "severe" impairment at step two of the five-step sequential analysis, 20 C.F.R. § 404.152(a).  She discussed and excluded his mental impairments as non-severe but did not mention the left shoulder in her discussion of severe impairments.  Nor did she expressly reference his left shoulder, or indeed any of his other impairments, in concluding that plaintiff did not have an impairment or combination of impairments that equaled the listings that the ALJ did expressly consider, *i.e.*, the musculoskeletal system.

However, I agree with the Commissioner that the ALJ's decision makes it plain that she did consider the condition of plaintiff's left shoulder and implicitly found it non-severe and non-listed.  Plaintiff acknowledges that the ALJ referenced plaintiff's left shoulder in discussing his right shoulder:

> The objective medical evidence also failed to support the alleged severity and limiting effects of the claimant's reported status post right shoulder arthroscopy. The record discloses that he underwent arthroscopy four years before the alleged onset date.  An X-ray of the right shoulder from June 2015 was unremarkable for fracture or dislocation, and subsequent examinations disclose that the claimant's arthroscopic portals healed. An image of the claimant's left shoulder was also taken in 2015.  The imaging showed sublabral foramen, but it also showed no muscle tear, no muscle atrophy, intact biceps and infraspinatus tendon.  When the claimant underwent physical examinations at Island Musculoskeletal Care in October 2015, November 2015, and February 2016, he had limited range of motion in his shoulders.  However he also had 5/5 motor strength bilaterally, and normal reflexes.  The findings from the physical examinations at Island Musculoskeletal Care are consistent with Dr. Silverman's consultative examination findings.  Dr. Silverman also noted the limited range of motion in the claimant's shoulders, and 5/5 motor strength bilaterally.  Overall, Dr. Silverman found that the claimant had moderate limitations with heavy lifting.  The undersigned affords great weight to Dr. Silverman's opinion because Dr. Silverman examined the claimant personally and is an expert and is familiar with Social Security program rules.

(Citations omitted).

Plaintiff characterizes the references to plaintiff's left shoulder as "mindlessly reciting the evidence in his [sic] decision" and argues that the decision "contains no sufficient evidence [sic] for a reviewer to find that his [sic] RFC assessment actually considered Plaintiff's left shoulder impairment." I don't see anything "mindless" about the ALJ's observations, and I don't feel impaired in reviewing the ALJ's finding. Although the ALJ clearly focused her analysis on the condition of his post-operative right shoulder, she then compared it with the left shoulder, which she found normal except for a limited range of motion and a structural anomaly that might have put plaintiff at higher risk for a dislocated shoulder if he used it at the outer end of or beyond his residual motion range. She then went on to consider his shoulders bilaterally and found that notwithstanding some limitation on his range of motion, he had full strength. Based on the consultant's corresponding view that plaintiff had full strength and a limited range of motion, she held that plaintiff just had to stay away from heavy lifting. That equates to light work. I don't see anything mindless about her process or her conclusion.[1]

Aside from this argument concerning a defect in the ALJ's articulation of her analysis, plaintiff barely makes any argument that a finding that his left shoulder had a "severe" impairment would have changed the result here. Although he cites incomplete snippets of various medical records, the parts he leaves out hurt his case as much as the parts he cites help it. For example, plaintiff quotes a report from his treating physician finding that plaintiff's left

---

[1] As far as not evaluating plaintiff's left shoulder as part of the listing of impairments, it is well settled that an ALJ need not address the listing if the impairment is discussed during the evaluation of the claimant's RFC. See Norman v. Astrue, 912 F. Supp. 2d 33, 78 (S.D.N.Y. 2012) ("There does not appear to be a well-settled requirement that an ALJ provide an explanation for his conclusion at [this step] of the analysis[.]"). Rather, "the absence of an express rationale for an ALJ's conclusions does not prevent [a court] from upholding them so long as [the court is] 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010) (summary order) (quoting Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam)); see also Jeske v. Saul, 955 F.3d 583, 589-90 (7th Cir. 2020) (applying this framework in the context of Listing 1.04(A)).

shoulder has a "restricted range of motion" and "positive Hawkins sign" (which could mean the same thing). However, he leaves out the following sentences in the same report which say: "Otherwise patient has full active range of motion in bilateral elbows and wrist. Motor strength 5/5 bilateral shoulders, elbows and wrists. Sensation is intact. Reflexes are 2+ and symmetric of bilateral triceps, biceps and wrists extensors." And plaintiff ignores an essentially normal MRI of his left shoulder.[2]

All this means is that plaintiff cannot extend his left shoulder as far as most people. With the restricted light work classification that the ALJ found, I don't see why he would have to. Having reviewed the entire record, I have no doubt that a remand for the ALJ to specifically discuss whether his left shoulder was "severely" impaired would result in the same finding of non-disability as we are reviewing now. There was certainly substantial evidence to show that his left shoulder impairment was not severe. And these cases take long enough to resolve without futile remands.

## II. Treating Physician Rule

I agree with plaintiff that the ALJ's discussion of the treating physician opinion of Dr. Robert Hecht was not as robust as the regulation requires. At the outset, it is noteworthy that the ALJ erroneously identified Dr. Hecht as plaintiff's "primary care physician" when, in fact, he has an orthopedic surgical practice and is board-certified in physiatry, specialties that are directly on point for plaintiff's musculoskeletal impairments. Although the ALJ's error by itself is not sufficient to wholly undermine her analysis, it does not inspire confidence, as medical specialization is one of the factors that an ALJ must consider if she does not give the treating

---

[2] The MRI report of September 24, 2015 does show that plaintiff had sublabral foramen versus slap tear, but that is no impediment to light work.

4

physician's opinion controlling weight. See 20 C.F.R. § 404.1527(c)(5).[3] The ALJ not only misperceived Dr. Hecht's credentials, but did not reference any of the other considerations set forth in the regulations, like the nature and length of treatment or whether there was evidence to support the opinions.

Instead, the ALJ singled out Dr. Hecht's conclusions that plaintiff is "disabled" and "unable to work." The ALJ was correct that such statements by a treating physician who is not shown to have familiarity with the Social Security definitions of RFC and disability are entitled to little or no weight. 20 C.F.R. §§ 404.1527(c)(1)(3); 416.927(c)(1)(3). The only other reference to Dr. Hecht that the ALJ made was to Dr. Hecht's conclusion that plaintiff would need to take unscheduled breaks during workdays and be absent from work more than three times a month, which the ALJ regarded as "excessive" and "not substantiated by the record", although the ALJ did not explain why she reached these conclusions.

Because of the perfunctory treatment of Dr. Hecht's opinions, I would remand the case for further consideration if I thought there was a reasonable possibility that a fuller discussion might lead the ALJ to reach a different conclusion. But aside from Dr. Hecht's conclusions that the ALJ expressly, if not exhaustively, rejected, there are simply too many things about Dr. Hecht's opinion that don't make sense. For example, although Dr. Hecht's estimate of plaintiff's pain level was 9 out of 10, plaintiff declined to take any pain medications or undergo any kind of treatment. I can't see a reasonable way to reconcile that.[4] Similarly, Dr. Hecht opined that plaintiff can only lift less than five pounds, and that only occasionally – the highest limitation

---

[3] Offsetting the ALJ's error to some extent is the fact that many of Dr. Hecht's treatment notes erroneously refer to plaintiff as "female."

[4] Even if plaintiff is allergic to certain pain medications, as he stated in his application, that does not explain why he declined to pursue other forms of pain management or treatment.

there is. But there is nothing deficient about the strength in plaintiff's arms, back and shoulders; it is his range of motion that has some restrictions. I therefore see no rational basis to conclude that plaintiff can't lift a reasonable amount of weight as long as he doesn't have to twist or extend his arms too much higher than his shoulders. And despite the limitations in plaintiff's range of motion, plaintiff declined Dr. Hecht's consistent recommendations that he undergo physical therapy, which can be very helpful with restricted motion injuries. Finally, Dr. Hecht had recommended an EMG to see if there was any nerve damage in plaintiff's arms or shoulders, but plaintiff declined that too.[5]

The treating physician rule essentially means that, all things being equal, when there is a conflict between a treating physician and a consulting physician, an ALJ should defer to the former. But the rule recognizes that where the treating physician's opinion is troublesome, that deference is not required. See Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) (ALJ "properly declined to accord controlling weight to the opinion of" plaintiff's treating physician where the opinion was "internally inconsistent and inconsistent with other substantial record evidence"). In addition, although a single-examination consulting opinion, as a general matter, is entitled to less deference than that of a treating physician, see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999), that is of less concern here, where the nature of plaintiff's orthopedic impairments do not wax and wane from day to day, and the limitations found by the treating physician were essentially the same as those found by the consultant. See 20 C.F.R. § 416.927(c)(2) (greater weight is afforded to opinions from treating physicians because they may

---

[5] I also can't ignore the context of plaintiff's repeated visits to Dr. Hecht. There is only one reason it could make sense, at least for the most substantial part of the relationship, for plaintiff to show up every few weeks over a several month period, get the same diagnosis and finding of disability, and then disregard Dr. Hecht's advice to get therapy or more testing: plaintiff needed a doctor's finding of "disability," *i.e.*, inability to return to work, at regular intervals to continue qualifying for worker's compensation benefits. There is nothing wrong with that, but it is not exactly the kind of "treating" relationship to which the Social Security Regulations afford deference.

6

provide a more "detailed, longitudinal picture" of medical impairments and "a unique perspective that cannot be obtained" from a consultative examination).

I would have preferred, and the regulation requires, more elucidation from the ALJ on why she discounted the entirety of Dr. Hecht's opinion. However, on this record, I am confident that a remand would not result in a different conclusion on residual functional capacity or disability. Although the ALJ failed to explicitly consider the factors underlying the treating physician rule, my review of the record assures me that there were good reasons for assigning little weight to Dr. Hecht's opinion, and thus the procedural error was harmless. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (remand unnecessary where ALJ applied the substance of the treating physician rule, even if he committed procedural error in failing to detail reasons); see also Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (remand unnecessary if application of the correct legal standard would lead to the same conclusion).

### III. Plaintiff's Credibility

This point can be disposed of easily. As suggested above, the record clearly supported the ALJ's conclusion that plaintiff was exaggerating his impairments and pain. He claimed to be suffering from extreme pain and limited ability to do certain activities, but this was inconsistent with what he told the consulting psychologist – that he could dress, bathe, groom, cook, clean, do laundry, play musical instruments, and drive without any limitation. A person can't be suffering to the level plaintiff said he was and still do all of those things. Plaintiff points out that he testified that he can only care for his birds "once per week *if he was able*" (emphasis from plaintiff's brief), but he is clearly caring for them enough to keep them alive. He similarly testified that he can only do shopping once per month, but whatever his grocery needs are, he is

taking care of them. Even Dr. Hecht's abundant treatment notes say nothing about being "unsteady on his feet" or numbness in his legs, to which he testified at the hearing.

Like her discussion of why she was rejecting Dr. Hecht's opinions, the ALJ could have been more thorough in discussing plaintiff's credibility. But the record is so replete with support for the ALJ's conclusion on credibility that remand is not required.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is denied, and defendant's motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment in favor of defendant, dismissing the complaint.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
February 3, 2021

8